TEAGUE, Admrx., Plaintiffs, v. CITY NATIONAL BANK AND TRUST COMPANY OF COLUMBUS, Trustee, Defendants.

Common Pleas Court, Licking County.

No. 40976.   Decided July 17, 1957.

418

Vorys, Sater, Seymour & Pease, Columbus, for The City National Bank and Trust Company of Columbus, Trustee.
Jones & Jones, Newark, for plaintiffs.

## OPINION

By HOLTSBERRY, J.

This action is one to construe a portion of the will of Orville C. Teague, and obtain a declaratory judgment accordingly. The petition of plaintiffs and answer of the defendant Trustees puts in issue the divergent views and claims of the parties. The case was submitted to this Court upon the pleadings, evidence, stipulations and statements of counsel, and upon the briefs.

Item 5 of the will of Orville C. Teague provides in part:

"I further direct that my Executor as soon as practicable after my decease, invest for each of my children the sum of Twenty-Five Thousand ($25,000.00) Dollars in a refund annuity in some old line life insurance company or companies. In case such insurance annuity is not obtainable from such insurance company or companies satisfactory to my Executor, then said fund of Fifty Thousand ($50,000.00) Dollars shall pass to the Trust hereinafter provided for."

The dispute arises since the parties claim that Item 5 of the will does not specify to whom the refund should be payable. It was stipulated that there were two children, Jean Elizabeth Teague and Carl O. Teague, and that the executors did obtain the refund annuities which provided that if any refunds are payable they shall be paid to the trustees under the will of Orville C. Teague.

Grace H. Teague, the mother of Jean Elizabeth Teague, the incompetent daughter of testator, in her capacity as guardian of her daughter signed the applications for Jean Teague's annuities, and the son, Carl O. Teague, signed the applications for his own annuities. In all of said policies which were submitted to the Court it was provided that the refunds should be payable to the trustees of the estate. The beneficiaries under the trust include Grace H. Teague, who was the widow of the testator, said Carl O. Teague, and his wife, who are to receive income so long as they live, and may in addition, be paid five percent of principal per year. The principal, after the death of the life beneficiaries, is to be paid to the children of Carl O. Teague. The life beneficiaries have no power to sell or assign their interests in the trust, which interests are further restricted and protected by a "spendthrift" clause.

The entire will which is admitted in evidence, and has on two occasions been judicially determined in part, is as follows:

"LAST WILL AND TESTAMENT OF
ORVILLE C. TEAGUE

"I, Orville C. Teague, do make this my Last Will and Testament.

"Item 1st: I desire that all of my just debts and the expenses of administration of my estate and all taxes, including inheritance and Federal Estate taxes be paid out of my estate.

"Item 2nd: I give and devise to my son Carl O. Teague the house and

ot located at the North East Corner of Main and Church Streets in the Village of Utica. Ohio, together with all furniture and fixtures, including beds and bedding, kitchen equipment and all other portable articles in and about said residence.

"Item 3rd: I give and devise to my wife Grace Hill Teague my home property at the North West Corner of Main Street and Factory Street projected west, together with all of the rest and residue of my furniture, fittings, household and other portable articles, also all books, papers, jewelry, portraits, silverware, clothing, and my automobile.

"Item 4th: I give and devise to my daughter Jean Elizabeth Teague my property consisting of a house and seven (7) acres of land on the Utica-Homer Road just west of Utica.

"Item 5th: I direct my Executor to hold the sum of Ten Thousand ($10.000.00) Dollars in money or in U. S. Bonds, for the purpose of paying and to pay to my said wife and son each an allowance of One Hundred and Seventy-five ($175.00) Dollars per month until such time as the income from the trust fund hereinafter provided for shall begin to be paid to them. I further direct that my Executor as soon as practicable after my decease, invest for each of my children the sum of Twenty-Five Thousand ($25,000.00) Dollars in a refund annuity in some old line life insurance company or companies. In case such insurance annuity is not obtainable from such insurance company or companies satisfactory to my Executor, then said fund of Fifty Thosuand ($50,000.00) Dollars shall pass to the Trust hereinafter provided for.

"Item 6th: I give and devise to my son, absolutely the following stocks and securities, viz:—

| | |
|---|---|
| "$2500.00 | par value in Studebaker 6% notes |
| 100 | Shares Armour & Company common stock |
| 50 | Shares Radio Corporation of America, Common Stock |
| 150 | Shares Pennroad, Common stock |
| 25 | Shares Hudson Motor Car Co., common stock |
| 50 | Shares Republic Steel Corporation common stock |
| 100 | Shares Curtis-Wright Corporation, common stock |
| 50 | Shares Inland Investors Corporation, common stock |
| 5 1/10 | Shares, Mission Corporation, common stock |

"All of the stock and notes of the Utica Manufacturing Company in my name, or otherwise belonging to me.

"Item 7th: All of the rest, remainder and residue of my estate including money, bonds, stocks, and all other property of any nature whatsoever I give, devise and bequeath to the Union Trust Company of Newark, and to Harry L. Everts as co-trustees.

"IN TRUST NEVERTHELESS, for the following uses and purposes:

"A. To pay the net income of the trust fund in regular and approximately equal monthly installments shared as follows, to my said wife Grace Hill Teague, Forty (40) per cent thereof, to my son Carl O. Teague, Forty (40) per cent thereof, and to my daughter Jean Elizabeth Teague, Twenty (20) per cent thereof, or the survivor of them for the lifetime of each of them, provided that the share of any deceased beneficiary shall be divided as follows; if Grace Hill Teague or Jean Elizabeth Teague die,

420

such share go **the** the survivors or primary beneficiaries share and shar
alike but from and after the death of my said son Carl O. Teague, m
trustees shall hold the trust fund and his share of the future incom
thereof plus such share of the income he receives or would have receive
if living, as survivor of either or both of the other two primary benefi
ciaries, upon trust to pay his share of the income of the trust fund othe
than stock dividends unto the present or any future wife of my said so
so long as she remain his unmarried widow share and share alike wit
the heir or heirs of his body who may happen to survive him until th
death of both my said wife and daughter and also the death of my son'
wife, or unless she remarry in either of which events said trust shal
cease and determine and the net corpus of said trust fund plus an
undistributed income shall pass absolutely and in fee simple share an
share alike to the heirs of the body of my said son Carl O. Teague
provided however, that from the share of the income from said trus
fund available to be paid to my said wife, son and daughter for an
during the natural life of each of them same shall be paid only th
following express terms and conditions: such payment shall be mad
in monthly installments on the 1st day of each month and each install
ment shall be payable and shall be paid only to each of said beneficiarie
personally, and the same shall not be payable to any other person b
reason of any transfer or assignment, by operation of law or otherwis
of any supposed or possible right of such beneficiary or beneficiaries t
receive the same. And in the event that any one of said beneficiaries
shall by operation of law or by reason of any act of his or hers be barre
or prohibited from receiving the payment of any installment and apply-
ing the same to his or her own use as the case may be such installment
shall not be payable to him or to her but shall be payable by said Trus-
tees to the corporate Trustee under this trust which shall expend the
same or so much as in its discretion is advisable and expedient for the
benefit of such beneficiaries and/or unmarried widow and child o
children of said son which money shall be applied to the care, board and
clothing of such beneficiary or beneficiaries and/or the wife and child
or children of said son Carl O. Teague as far as may be proper or neces-
sary in the judgment of the Trustees.

"B. My trustees shall have full power to manage all of my property
as a trust fund, to purchase and/or sell mortgage, notes, stocks, bonds
and other securities as they may deem proper, without being restricted
to a class of investment which a Trustee is or may be permitted by law
to make; provided, however, that not more than 50% of said fund shall
be invested in common stock at any one time; and provided, further,
that in all investments made, none shall be entered into without the
express consent of Harry L. Everts if living or if dead of his duly
appointed and qualified successor.

"C. The trustees may in their discretion and upon the written
request of any of the beneficiaries of the trust, have the right to with-
draw installments of principal and pay over to such beneficiary from
time to time but not in excess of five (5) per cent of the then market
value of his or her proportion of the principal of such trust fund in any
one year for each such beneficiary. And such withdrawal shall in each

instance operate to reduce the distribution of the income as provided in Section A hereof to each such beneficiary as may receive a portion of the principal of said trust fund in proportion to his or her share of the principal of said trust fund so reduced.

"D. Said Trustees shall receive such compensation for their services as shall be fixed by the Probate Court of Licking County, Ohio.

"E. In the event of a vacancy in the office of either or both Trustees, such vacancy or vacancies shall be filled by appointment of such Trustee or Trustees as the majority of the primary beneficiaries herein named, shall decide.

"F. No bond in excess of Five Thousand Dollars shall be required of the personal Trustee named under this trust.

"I hereby appoint Harry L. Everts as Executor of this will to serve without bond.

"IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of September, 1935.

ORVILLE C. TEAGUE

"Signed by the said Orville C. Teague and declared to be his last will and testament in our presence and at his request in his presence and in the presence of each other signed by us as witnesses this 12th day of September, 1935.

W. F. LEWIS
HORATIO D. BERRY."

Jean Teague has died and her personal representative, her mother, seeks to secure for Jean's personal estate the refunds due on the annuity policies on Jean's life, Carl O. Teague seeks to have the refund provisions in his policies changed to make any refunds payable to his own estate rather than the trust. To reach a decision herein the Court must, as in all will questions, ascertain the intention of the testator, as the controlling object in the construction of a will is to ascertain and declare the testator's intention. (Union Savings Bank & Trust Company v. Alter, 103 Oh St 188.)

As is sometimes expressed, the intent is to be ascertained from a full view of everything within the "four corners of the instrument," in light of the circumstances surrounding the testator at the time of the execution of the will. (41 O. Jur., Wills, pg 600, Section 469.)

In determining the surrounding circumstances a court should, as far as possible, try and put itself in the position of the testator at the time of making the will. Intention must be determined from language used in the will as applied to the subject matter and read in the light of surrounding circumstances at the time of execution. (Setterman v. Bingham, 115 Oh St 35; Anderson v. Gibson, 116 Oh St 684; McMerriman v. Schiel, 108 Oh St 334; 41 O. Jur., Wills, pg 595, Section 468.)

Many rules of construction have been referred to by courts, but none should be permitted to thwart the desire and purpose of a testator if the desire and purpose of the testator can be ascertained from language employed, and while the purpose of construction as applied to wills is unquestionably to arrive at the intention of the testator, that intention is not that which existed in the mind, but that which is expressed by the language of the will. Intention need not be declared

422

in express terms in the will, but may be deduced as a matter of infer ence or implication from all provisions of the will taken and considered together. (Clyde v. Simpson, 4 Oh St 455; Morgan v. First National Bank 84 Oh Ap 345.)

The question arises did Orville C. Teague intend that the refund be paid to the heirs of the annuitant or to the trust estate. Item 5 in effect provides that "Each of my children," shall receive whatever benefits can be derived by the executor expending Twenty-Five Thousand ($25,000.00) in a refund annuity. The benefits are provided for "each of my children." The Court notes that the testator did not add words such as "their heirs," or "executors or administrators," which would create an absolute fee title.

It is provided however, that "in case such insurance annuity is not obtainable from such insurance company or companies satisfactory to my executor, then said sum of Fifty Thousand ($50,00.00) Dollars shall pass to the trust hereinafter provided for." This provision of the will places considerable discretion in the executor and made it clear that i certain circumstances existed the testator did not want the money to go to the children or the estates of the children, but to the trust. Fur ther, this direction for augmentation of the residuary trust clearly indi cates that testator intended the benefits of the annuities were to be en joyed by the children personally during their lives.

Let us further analyze the terms of the trust, itself. It makes provi sion for the payment of income and optional, but limited, amounts of principal to the testator's wife, daughter, son and daughter-in-law. The principal of the trust after the death of the life beneficiaries goes to the heirs of the body of Carl O. Teague. Sums payable cannot be trans ferred or assigned by operation of law or otherwise and payments are further protected by a "spendthrift" clause which provides that if any life beneficiary should be prohibited from receiving payment of any installment such installments are to be paid for the benefit "of such beneficiaries and/or unmarried widow and child or children of said son which money shall be applied to the care, board and clothing of such beneficiary or beneficiaries and/or the wife and child or children of said son, Carl O. Teague, as far as may be proper or necessary in the judg ment of the trustees."

With respect to principal beneficiaries, they are given only restricted withdrawal rights. Testator was mindful of dissipation of principal as revealed by these provisions and took precautions in order that his trust estate would eventually go to grandchildren. It appears from language used that testator's clear intent was that refunds, if any, were to go to the trust, and then through the trust to the grandchildren.

Testator did not create a straight or simple annuity, but was creating a refund annuity which is one where the insurance company agrees to pay an income for the life of the annuitant for which the purchaser pays a single premium; if the annuitant dies before the entire principal plus interest have been paid out in the form of income, then the unused part of the principal is refunded to a designated beneficiary.

The word "refund," means a return to the source from which the payment originated. (See Words and Phrases, Volume 36, page 672.)

further, the word "refund," has been defined by Webster as meaning to "return in restitution, repayment; to supply again with funds; to reimburse."

An annuity can continue only so long as the annuitant lives and by selecting such annuity testator indicated his intention to benefit his children during their lifetimes. Had he desired a type of investment to augment their estates he could have chosen some other type of investment which by express terms or operation of law would have descended through the estates of his children.

It is stated in 24 Corpus Juris Secundum, Section 1329, "Where the executor sets apart from the estate a sufficient sum to meet an annuity, he never parts with the title, and even if it is considered a trust fund for the benefit of the annuitant it must be returned to the executor for administration when the trust is terminated."

The case of Merrill v. Wooster, 92 Me., 460, 59 Atl., 596 is cited. While it is true that the issue in the Maine Case is not precisely the same as the issue in the instant case, there is reasoning which appears sound and applicable herein.

After careful consideration this Court finds that it was the intent of the testator that the refunds are to be made to the trustees of the estate of Orville C. Teague. Having determined this matter on the question of intent the Court will devote very little time to the other contentions raised.

It is contended by defendants that the copies of applications and annuity policies themselves clearly evidence not only that the refunds are to be made to the trustees, but that the plaintiffs in the action clearly understood and agreed that this was proper.

Exhibits D, E and F are policies payable to Carl O. Teague, and in each it is expressly provided that the refund is to be paid to the trustees of the estate of Orville C. Teague, deceased, and in each instance said Carl O. Teague joined in application for the annuity, which application directs among other things to whom the payment is to be made. No right is reserved in said three policies to change the beneficiary.

Exhibits G, H and I are the policies payable to Jean Elizabeth Teague or Grace H. Teague, guardian of Jean Elizabeth Teague, and in each it is expressly provided that the refund is to be paid to the trustees of the estate of Orville C. Teague, deceased, and with respect to two of said contracts, Grace Hill Teague, guardian of Jean Elizabeth Teague joined in the application for the annuity, which application directs among other things, to whom the payment is to be made.

The defendants contend that since this was years ago in 1936, that the annuity contracts were written that such consent in 1936 of plaintiffs constituted a waiver, in any event, with respect to payment of the contracts of insurance in question. Defendants further contend that the relief sought by plaintiffs should be denied and that they are precluded from same under the provisions of §10506-40 GC, which was in effect between 1932 and 1940, and pertain to the filing of accounts and the final effect of such. They contend that since no exceptions were filed to the expenditure of funds for the annuities and refunds payable to the trust estate that Carl O. Teague and Grace H. Teague, then guardian, now

424

administratrix of the estate of Jean Elizabeth Teague, are not now in a position to challenge that which was done by the executors, irrespective of the fact that they did consent to what was done and joined in the applications for the issuance of the annuities with refunds payable to the trustees.

The Court having decided the issues herein by ascertaining and determining the intent of the testator does not deem it necessary to determine these last questions raised.

Entry shall be prepared and submitted to this Court.

Exceptions allowed.